# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| JEANNE VOLTZ-LOOMIS; GARY ZACHARIAH THOMAS; DENISE EDGAR; BRANDON MOORE; ALLEN SLAUGHTER; GAY OPEL STANLEY; BRISON AKEEM ALLISON; PROTECTION & ADVOCACY FOR PEOPLE WITH DISABILITIES, INC.; JOHN DOES 1 through 10; JANE ROES 1 through 10*; on their own and on behalf of a class of similarly situated persons,*<br><br>     *Petitioners*,<br> v.<br><br>HENRY McMASTER, in his official capacity as Governor of the State of South Carolina, BRYAN STIRLING, in his official capacity as Director of the South Carolina Department of Corrections; the SOUTH CAROLINA BOARD OF PARDONS AND PAROLES; and CHRISTOPHER F. GIBBS, MOLLIE DUPRIEST TAYLOR, DAN BATSON, HENRY S. ELDRIDGE, LONNIE RANDOLPH and KIM FREDERICK, in their official capacities as members of the South Carolina Board of Pardons and Paroles.<br><br>     *Respondents* | Case No. 5:20-CV-01533-DCC-KDW<br><br>**Petitioners' Motion to Expedite and Memorandum in Support**<br><br>**Class Action** |

**PETITIONERS' MOTION TO EXPEDITE AND MEMORANDUM IN SUPPORT**

Petitioners seek expedited consideration of their Emergency Petition for Writs of Habeas Corpus (Doc. 1) ("Petition").[1] As set forth more particularly in the Petition, Petitioners seek emergency relief to address Respondents' refusal in violation of Petitioner's constitutional rights

---

[1] Petitioners have provided all of the Respondents with courtesy copies of the Petition and its exhibits while formal service is in process.

to take the steps necessary to mitigate the imminent deadly threat posed by the COVID-19 pandemic now introduced into South Carolina's state prisons.

While Governor McMaster declared a state of emergency on March 13, 2020, recognizing the dangerous spread of the COVID-19 virus, persons incarcerated in state prisons have not been afforded the protections that Order was intended to provide. Respondents have failed and refused to take effective action to reduce the prison population, allow for any meaningful social distance, implement a rational testing protocol, isolate and provide appropriate care for those who may already be ill, or continue necessary treatment for those with other serious medical issues. Faced with similar issues, and as discussed below, other courts have acted expeditiously to protect the rights of this vulnerable population.[2] It is true that some prisons in other states have been hit harder than in South Carolina. But that is itself a compelling reason for urgent action *now*. Where outbreaks have hit other prisons, positive infection rates have been found in as much as 80% of the population likely leading to staggering death counts. In South Carolina, there may be time to avoid that. But there is no time to spare.

As described in the Petition and the Declarations of Dr. Jonathan Golob (Doc. 1-1), Dr. Jamie Meyer (Doc. 1-3), and Dr. Marc Stern (Doc. 1-14), correctional facilities, such as those under the supervision of the SCDC, are particularly vulnerable to the rapid spread of the COVID-19 virus. COVID-19 is transmitted from person-to-person often by people when they are

---

[2] *See, e.g.*, Order, *Wilson v. Williams*, No. 4:20-cv-00794 (N.D. Ohio Apr. 14, 2020) (copy attached as Exhibit 2); Order, *United States v. Zukerman*, No. 16-CR-194 (AT) (S.D.N.Y. Apr. 3, 2020) (releasing medically vulnerable prisoner to home confinement despite "seriousness and duration of his criminal conduct" because "the Court did not intend for his sentence to include incurring a great and unforeseen risk of severe illness or death brought on by a global pandemic") (internal quotations omitted); Memorandum and Order, *Thakker v. Doll*, No. 1:20-CV-0480 (M.D. Pa. Mar. 31, 2020) (categorically releasing petitioners suffering from chronic medical conditions given their inability to practice social distancing in detention facilities and the resulting "grave consequences" they could face from a COVID-19 outbreak); *see also* Prison Policy Initiative, Responses to the COVID-19 Pandemic, https://www.prisonpolicy.org/virus/virusresponse.html#releases (last updated Apr. 23, 2020).

asymptomatic. Physical distancing, which is required to slow the spread of the virus according to the Centers for Disease Control and Prevention ("CDC") and other public health experts, is difficult, if not impossible, in correctional facilities where inmates share living spaces, dining areas, bathrooms, showers, and other common areas. In addition, incarcerated inmates generally have a higher incidence of underlying medical conditions that put them at particularly high risk from COVID-19, and correctional facilities are characterized by less hygienic conditions and fewer opportunities to practice good hygiene, including frequent hand washing and access to hand sanitizer and masks, than exist outside such facilities.

South Carolina Department of Corrections ("SCDC") facilities also suffer from severe understaffing, which has been widely documented over many years and gives rise to unique risks in the South Carolina prisons during this pandemic. As Dr. Meyer explains, the understaffing within the SCDC will be exacerbated by the pandemic due to staff illnesses and absences as well as the increased workload demands due to the coronavirus. The SCDC itself admits it is 900 officers short, which Dr. Meyer concludes is a strong signal that the SCDC is ill-prepared to handle this public health crisis and will result in serious threats to the safety, security, and health of all individuals that reside and work at SCDC facilities. Meyer Dec. at ¶¶ 30–34.

The day before this Petition was filed on April 21, 2020, the SCDC reported its first confirmed case of COVID-19 in an inmate. Another was announced the day after the Petition was filed.[3] It is inevitable that more will be announced in the coming days. Right now, there are 40 SCDC staff reported positive and that number has and likely will increase steadily. The positive reports are just the "tip of the iceberg." Meyer Dec. at ¶ 28. There is little question that the number of confirmed COVID-19 infections among staff and inmates will continue to rise in the coming

---

[3] *See* http://www.doc.sc.gov/covid.html.

weeks just as it has in other prisons across America. And, as more staff and other visitors to SCDC correctional facilities become infected, they will inevitably spread the virus to others in the surrounding communities.

A recently published epidemiological study reports that models projecting country-wide fatalities are underestimating them by as many as 100,000 because they are not accounting for jails and prisons, which "will become veritable volcanoes for the spread of the virus."[4] Indeed, a state prison in Ohio has become "[t][he largest-known coronavirus hotspot in the country."[5] There are 2,011 inmates in that Ohio prison comprising more than 80 percent of the population who had tested positive for COVID-19. *See id.* Notably, "[m]any of those who tested positive showed no symptoms." *Id.* The only reason that authorities discovered the extent of infection in the prison is that the Ohio Governor ordered that all inmates be tested. *See id.*

The most effective way to prevent a similar public health crisis from developing in SCDC correctional facilities (if it has not developed already) is to thin the inmate population consistent with public safety. Meyer Dec. at ¶ 38 ("Reducing the size of the population in jails and prisons is crucial to reducing the level of risk for those within those facilities and for the community at large."). This court should stem the tide of COVID-19 cases in the SCDC by taking immediate action.

Faced with similar habeas claims brought on April 13, 2020 by inmates in a federal prison in Ohio, the district court granted petitioners' motion to expedite and ordered responsive briefing by April 17, 2020. *See Wilson v. Williams*, No. 4:20-cv-00794, Order (Doc. 7) (N.D. Ohio Apr.

---

[4] COVID-19 Model Finds Nearly 100,000 More Deaths Than Current Estimates, Due to Failures to Reduce Jails at 2 (copy attached as Exhibit 1).

[5] *See* https://www.cleveland.com/coronavirus/2020/04/why-has-ohios-marion-prison-become- the-number-one-coronavirus-hotspot-in-the-united-tates.html?utm_source=The+Marshall+Project+Newsletter&utm_campaign=8d638060bd-EMAIL_CAMPAIGN_2020_04_23_11_44&utm_medium=email&utm_term=0_5e02cdad9d-8d638060bd-174457969.

4

14, 2020) (copy attached as Exhibit 2). The Court also scheduled a hearing for April 17, 2020, and ordered the respondents, before the hearing, "to identify all inmates who meet the following conditions: inmates suffering from documented and pre-existing: heart, pulmonary, kidney or liver conditions, diabetes, or conditions that cause a person to be immunocompromised, including but not limited to cancer, transplants, and HIV or AIDS, but excluding smoking and obesity." *See id.* Minute Entry (N.D. Ohio Apr. 17, 2022). By order dated April 22, 2020, the court certified a class under Federal Rule of Civil Procedure 23(b)(2) and ordered respondents to identify members of the class and evaluate them for compassionate release, parole or community supervision, furlough or transfer to a facility capable of taking appropriate measures to reduce the risk of COVID-19 transmission. *See Wilson v. Williams*, No. 4:20-cv-00794, 2020 WL 1940882 (N.D. Ohio Apr. 22, 2020).

Accordingly, to avoid a looming public health crisis in SCDC correctional facilities, this Court should grant Petitioner's motion for expedited consideration of the Petition, order Respondents to answer the Petition on an expedited basis as soon as the Court deems appropriate, and, if necessary, schedule a hearing immediately thereafter.

Dated: April 24, 2020

                                    Respectfully submitted,

                                    s/ Susan K. Dunn
                                    SUSAN K. DUNN (Fed. Bar # 647)
                                    SHIRENE C. HANSOTIA (Fed. Bar #12558)
                                    American Civil Liberties Union Foundation of
                                    South Carolina
                                    P.O. Box 20998
                                    Charleston, South Carolina 29413-0998
                                    Telephone: (843) 282-7953
                                    Facsimile: (843) 720-1428
                                    Email: sdunn@aclusc.org
                                    Email: shansotia@aclusc.org

JONATHAN W. HUGHES (CA. Bar # 186829)*
Arnold & Porter Kaye Scholer LLP
3 Embarcadero Ctr., Fl. 10
San Francisco, CA 94111-4075
Telephone: (415) 471-3156
Facsimile: (415) 471-3146
Email: jonathan.hughes@arnoldporter.com

* = appearing *pro hac vice*

*Attorneys for Petitioners*