**BEFORE THE U.S. DISTRICT COURT FOR THE DISTRICT OF SOUTH CAROLINA**

*Voltz-Loomis* et al v. *McMaster* et al                                    **5:20-cv-01533-DCC-KDW**

**Marie Assa'ad-Faltas, MD, MPH's *EMERGENCY* Motions to Intervene**
**And to be declared a State-wide Class Representative of TWO Classes**
**With Current Class Counsel Being Required to Represent Her and Her TWO Classes**
**OR With *Other* Counsel being appointed to Represent Her and Her TWO Classes**
**For the Purposes of (1) Obtaining a State-wide Moratorium on Short-term Incarcerations**
**Until the Covid-19 Risk is Contained and Until a Study is Conducted**
**On the Corrective and Retributive Value, if Any, of Short-term incarcerations**
**AND (2) Obtaining *Immediate* Release of *Every* State Prisoner of Whose Conviction**
***Any* Jurist Doubted the Constitutionality by Granting PCR, by Dissenting from Affirmance**
**of PCR Denial or from Reversal of PCR Grant, *OR* by Granting Federal Habeas relief,**
**COMBINED WITH Proposed Intervenor's Motion for Electronic Filing and Receiving.**

Dr. Assa'ad-Faltas is older than 65, has pre-existing conditions and is at risk of a 30 day-incarceration in a South Carolina ("SC") short-term detention facility ("STDF") of a type she knows cannot *realistically* protect its inmates from Covid-19. Those SC STDCs are instead best equipped to very efficiently *multiply* the infection and release it back to the community as a large number of at risk persons come from the community, become enclosed in crowded close quarters for periods longer than the known incubation period of Covid-19, then get released.

Dr. Assa'ad-Faltas holds permanent licenses to practice Medicine and Surgery in Egypt and Virginia and, in December 1981, obtained a Master of Public Health (MPH) in Epidemiology and Biostatistics from the University of North Carolina at Chapel Hill (UNC-CH), in which she had enrolled in August 1979 as a participant in an expedited pilot subset of the Fullbright Scholarships personally requested by then-President Carter upon reaching the Camp-David Accord for peace between Egypt and Israel. The hundred "Camp-David" or "Peace" pilot fellows' success lead to two more phases of over one thousand each; the whole program ended in the late 1980s.

President Carter proved too optimistic about his citizens', specially fellow southerners', reception of young, highly educated (two conditions of participation) Egyptians who were NOT intellectual *tabula rasa*. At the first whisper of a different opinion, the response was a variation of "If you don't like it, why don't you leave?" That still shocks Dr. Assa'ad-Faltas, who was raised on "If you don't like it, why don't you improve it *to the maximum humanly-possible perfection?*"

Nothing short of perfection is often necessary in Public Health and Medicine and Surgery, as for example, if *most* but not all bleeders are ligated in surgery; the patient would still bleed to death.

Dr. Assa'ad-Faltas lauds U.S. District Judge Coggins' interrogatories to Defendants about relevant numbers and suspects Plaintiffs' counsel sought only the politically-palatable release of certain classes of inmates of SC's state prisons. But Article III gives tenure during good behavior so that those vested with the judicial power of the United States may be freed to do *all* that is just.

*Current* plaintiff classes *alone* can neither reduce SC's prison population enough to prevent SC's prisons and jails becoming *efficient* incubators of Covid-19 and *cruel* executioners **of the actually innocent or *presumed* innocent.** The two proposed additional classes Dr. Assa'ad-Faltas has standing to represent are *the minimum* necessary for the goal of this action, would not delay it, as shown below, and should be allowed to be added with any representation deemed proper.

While SC PCR judges often neglect to use explicit terms vacating a challenged conviction, grant of new trial, in state PCR or federal habeas, *necessarily* vacates the conviction (otherwise, Double Jeopardy would bar the new trial) and restores the presumption of innocence; but bail is not automatic and most PCR/habeas grantees remain incarcerated while SC's Attorney General ("SCAG") appeals the prisoner's relief or while the solicitor prepares for a new trial. Upon in-

**page 1 of 4 exclusive of attachments and of incorporation by reference of all matter available for judicial notice**

formation and belief, several SC PCR grantees who would have been admitted to bail under the standards of SC's Chief Justice Beatty's Covid-19 memoranda had they been brought before an SC court upon initial arrest on or after 6 March 2020 are still incarcerated. The presumably inadvertent omission of that class works denial of equal protection without rational basis.

*Slack* v. *McDaniel,* 529 U.S. 473, 478 (2000), holds a certificate of appealability (COA) "should issue (and an appeal of the district court's order may be taken) if the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." **When, as in Dr. Assa'ad-Faltas' case, an SC PCR judge granted relief that is *ipso facto* conclusive proof that at least *one* jurist of reason *found* (**not merely "*would find*") "**a valid claim of the denial of a constitutional right."** Dr. Assa'ad-Faltas believes, and has factual studies and plausible legal arguments, that. in 21st Century SC, PCR grants should not be appealable by SCAG because the *actual* length of appeal, coupled with the substantial probability of affirmance of the PCR grant, *ipso facto* deny the PCR grantee's Sixth Amendment right to speedy retrial. Also, in some cases, PCR grant is *functionally equivalent* to an acquittal, "correct or not"; and Double Jeopardy bars SCAG from appealing. *United States* v. *Marin Linen Supply Co.,* 430 U.S. 564, 571-2 (1977). Moreover, the doubt expressed by a jurist, whether the PCR trial judge acting alone or a panel or a dissenting member of the intermediate state appellate court, **breaks <u>the chain of confidence</u> *morally necessary* for a decent and evolved society** to exact punishment on one who may prove to be actually innocent. *Vide, e.g., Reed* v. *Texas,* 589 U.S. _ (2020) (Statement of Justice Sotomayor and cases cited therein).

Of course, death by Covid-19 is no less a death than death by electrocution or lethal injection.

Therefore, Dr. Assa'ad-Faltas is a legitimate class representative of every person convicted of a crime in SC and the constitutionality of whose conviction was doubted by at least one SC jurist, whether a PCR judge who granted relief, an SC Court of Appeals Judge who dissented from affirmance of denial of PCR by the PCR judge or from reversal of PCR grant by SC's Court of Appeals *en banc* or by a panel thereof, or, if SC's Court of Appeals affirmed a PCR grant or reversed denial of PCR and SCAG appealed to SC's Supreme Court which reversed SC's Court of Appeals.

If such PCR grantee is incarcerated or at risk of being incarcerated upon a final adverse action by SC's Supreme Court and agrees that a decision in the PCR grantee's favor at any point along the PCR "breaks the chain of confidence" and should not have been appealed by SCAG, that PCR grantee is a member of the first class sought to be added and represented by Dr. Assa'ad-Faltas and must be released or protected from being incarcerated until the legality of the appeal which resulted in the reversal of the PCR grant is determined with finality.

At the early stage of this litigation, the addition of this class would not delay the litigation. Further, this Court could simply add a question about the number of prisoners who received PCR grant or a favorable minority or majority opinion along the process but is still incarcerated.

Dr. Assa'ad-Faltas' rights cannot *realistically* be protected without intervention because decision on the same subject in this District are affected by whether a claimant is *pro se* or represented and, if so, whether a national-caliber law firm is involved. Theory may be different.

Attached is a transcript of Dr. Assa'ad-Faltas' successful *pro se* 6 February 2007 oral argument before SC's Court of Appeals where she argued that grant of new trial based on after-discovered evidence should not be appealed by the Prosecution. Although *that* panel (which included now-Chief Justice Beatty) did not reach that question because it ruled for Dr. Assa'ad-Faltas on other grounds, *City of Columbia* v. *Assa'ad-Faltas,* 2007-UP 193 (26 April 2007), SC's Supreme Court later found unappealability in [*State* **v.** *Smith*](), 383 **SC** 159, 679 SE 2d 176 (2009). That is to reassure this Court and the current parties that Dr. Assa'ad-Faltas has a good history of advocating and predicting advancements in the law and to demystify this Court about her current plight.

**page 2 of 4 exclusive of attachments and of incorporation by reference of all matter available for judicial notice**

The City of Columbia never forgave Dr. Assa'ad-Faltas for being innocent and for having proven that the City used a fabricated Polaroid to frame her. Because no punishment befell the City from its first failed frame of Dr. Assa'ad-Faltas, the City tried again and again, from trying her for "front-yard parking" for allegedly parking in the front yard of her then-home, to falsely arresting her for looking out of her own window when a neighbor was causing a commotion in the common parking lot of a two-quadriplex rental compound and calling it "surveillance" and "harassment in the first degree," of which Dr. Assa'ad-Faltas thank God, ultimately fully exonerated herself *pro se*, to calling it "unlawful acts" for Dr. Assa'ad-Faltas to mark with a line of side-by-side identical inverted plastic buckets the boundary of a vacant lot of land she co-owns with her mother. This time, the shocking incompetence of the counsel forced on Dr. Assa'ad-Faltas by later-self-overruled decree of SC's Supreme Court caused her to be convicted and sentenced to thirty days. Retired SC Chief Justice Toal, sitting as a PCR judge in SC circuit court granted relief finding any City ordinance criminalizing Dr. Assa'ad-Faltas' conduct pre-empted by state law and her counsel ineffective for having failed to make a likely dispositive argument. But SCAG sought *certiorari* and SC's Supreme Court granted it and reversed in one swoop, 2020-MO-004.

Marking the boundaries of one's vacant land is clearly non-violent; and Dr. Assa'ad-Faltas has *ipso facto* less than six months in her 30-day sentence; but she cannot partake of any relief the current plaintiff classes earn *solely* because she would be incarcerated in an SC STDF.

Covid-19 acquired in an SC STDF is no less lethal than Covid-19 acquired in a long-term prison.

Nor will Dr. Assa'ad-Faltas will be treated with any care or dignity befitting her age or education. Attached photos show bruises on her wrists and arms from too-tight cuffs during her 2009 and 2010 non-resisted arrests on false charges from which she was later, thank God, exonerated.

**"The life of the law has not been reason, but experience."** *The Common Law* by Oliver Wendell Holmes.

In challenges to the death penalty, extensive studies are submitted comparing crime rates with versus without, and before versus after abolition or reinstatement of, capital punishment. Death penalty *ipso facto* cannot possibly be intended to correct *the individual* on whom it is applied. So, the corrective value of capital punishment is never studied; likewise, the corrective value of sentences of life without possibility of parole ("LWOP") is never studied because the idea is that *the individual* so sentenced, corrected or not, is never to be released back into society. The remaining purposes of any punishment are retribution, restitution, and prevention of re-offenses.

Any punishment, however brief, which serves none of the above purposes, is purposeless sadism banned by the Eighth Amendment; *e.g.,* **Robinson v. California, 370 U.S. 660, 667 (1962), ("Even one day in prison would be a cruel and unusual punishment for the 'crime' of having a common cold.")** Now that *Timbs* v. *Indiana,* 586 U.S. _ (2019), made the Eighth Amendment in its entirety binding on the states through the Fourteenth, any state punishment, however brief, **must pass the *federal* test** of "cruel and unusual" which is in turn controlled by "standards of a decent and evolving society." Whether *substantive* due process also demands it, 2020 decent U.S. society evolved to demand *scientific* evidence both for facts overcoming reasonable doubt as to convictions and for justifications of types and degrees of punishment for the presumably-duly convicted. SC's Legislature merely saying so *without underlying scientific evidence* FAILS both tests. Louis-Gillaume Otto, a diplomat who observed, and extensively reported to the King of France on, the formation of the U.S. Constitution, commented that Hamilton's Federalist Papers were too difficult for the ignorant and useless for the educated; Max Farrand's *The Records of the Federal Convention of 1787*, Volume III, Yale University Press.

Though criticising Hamilton is now taboo, it is quite possible that the jail sentences allowed to be imposed by SC's municipal or magistrate courts are too short to correct the hardened but overkill for the corrigible who would better respond to other measures. Studies are needed.

**page 3 of 4 exclusive of attachments and of incorporation by reference of all matter available for judicial notice**

Covid-19 convinced even the hardened politicians that Science cannot be defied or dispensed with. Penology can be no less of a science than virology. Though human behavior cannot be put in test tubes it can nonetheless be scientifically and systematically studied.

Dr. Assa'ad-Faltas tried to alert SC's judicial system; but the response, proven by two e-mails from Clerk of SC's Supreme Court Shearouse (attached), was no better than China's having initially detained and disciplined the first physician there to ring the alarm about Covid-19.

Covid-19 will not wait for the time it takes for new lawsuits to be instituted to obtain the moratorium Dr. Assa'ad-Faltas seeks by intervening in this case; so, she respectfully reminds U.S. District Judge Coggins of Justice Kennedy's concurrence in *Mallard* v. *District Court*, 490 U.S. 296, 311 (1989), (**"It is precisely because our duties go beyond what the law demands that ours remains a noble profession."**) and asks him to literally save her life and the lives of her classes.

WHEREFORE, Dr. Assa'ad-Faltas should be allowed to intervene, declared a representative of TWO statewide classes: (1) of persons who remain incarcerated or are at risk of being incarcerated in SC after at least one sitting SC jurist formally doubted the constitutionality of their conviction; and (2) of persons at risk of acquiring Covid-19 in SC STDFs, and obtain a moratorium on incarcerations of non-violent offenders/detainees in SC STDFs until the risk is contained.

Until counsel is appointed, Dr. Assa'ad-Faltas seeks leave to file and receive electronically because the *amended* Federal Rules of Civil Procedure effective 1 December 2018 allow such filing and receiving by *pro se* parties and because filing and receiving by regular mail is unduly burdensome to this aged, ailing and indigent *pro se* intervenor and because such electronic filing and receiving reduces this Court's staff's workload and results in more legible documents for this Court's and the public's viewing.

Respectfully submitted on 4 May 2020 and served on Plaintiffs' counsel, on SCAG, and on all lawyers who appeared for Defendants by e-mail at the same time, all God so willing.

[S/] Marie Assa'ad-Faltas, MD, MPH, Proposed Intervenor *pro se*
P.O. Box 9115, Columbia, SC 29290
Phone: (803) 783 – 4536          Cell: (330) 232 – 4164
e-mail: Marie_Faltas@hotmail.com and MarieAssaadFaltas@GMail.com

Attorneys served by e-mail:
SCAG  Alan McCrory Wilson        awilson@scag.gov

| | |
|---|---|
| **Shirene Carole Hansotia** | Email: shansotia@aclusc.org |
| **Susan King Dunn** | Email: sdunn@aclusc.org |
| **Jonathan W Hughes** | Email: jonathan.hughes@arnoldporter.com |
| | |
| **Thomas Ashley Limehouse, Jr** | Email: tlimehouse@governor.sc.gov |
| **Vordman Carlisle Traywick** | Email: ltraywick@robinsongray.com |
| | |
| **Daniel R Settana, Jr** | Email: dsettana@mckayfirm.com |
| **Janet Brooks Holmes** | Email: janetholmes1@mac.com |

**page 4 of 4 exclusive of attachments and of incorporation by reference of all matter available for judicial notice**