IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Jeanne Voltz-Loomis, et al., | ) | Case No. 5:20-cv-1533-DCC-KDW |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **DEFENDANTS (RESPONDENTS)** |
| | ) | **OPPOSITION TO PLAINTIFFS'** |
| Bryan Stirling in his Official | ) | **(PETITIONERS') MOTION FOR** |
| Capacity as Director of the | ) | **A 21-DAY EXTENSION, FILED** |
| South Carolina | ) | **AT ECF NO. 139** |
| Department of Corrections, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Pursuant to Local Civil Rule 7.06, DSC, Defendants–Respondents Bryan Stirling, in his official capacity as Director of the South Carolina Department of Corrections; South Carolina Board of Pardons and Paroles, Christopher F. Gibbs, Mollie Dupriest Taylor, Dan Batson, Henry S. Eldridge, Lonnie Randolph, and Kim Frederick (hereinafter "Defendants"), by and through their undersigned attorneys, submit this Response in Opposition to Plaintiffs–Petitioners' ("Plaintiffs") motion filed yesterday seeking a 21-day extension to the October 7, 2020 deadline in the Court's September 8, 2020 Rubin Order (ECF No. 134).

Plaintiffs filed this case on April 21, 2020 as an Emergency Petition for Writs of Habeas Corpus and Complaint, ostensibly as a Class Action. See ECF No. 1. Defendants quickly filed Motions to Dismiss on various grounds because Plaintiffs' peculiar petition and complaint was manifestly without merit. See ECF Nos. 36, 38, 40, 53 & 54. Once all briefing was complete and the parties had participated in court-ordered mediation, the Court held a status conference on July 1, 2020. During this status conference, the Court directed the parties to continue discussions in efforts to find a way to end the case, noting—among other issues—the "Court has grave concerns that the petitioners are asking this Court to act in a quasi-legislative capacity;" 7/1/2020 Hr'g Tr.

p. 6, ll. 8–10; "[t]he Court is alarmed at the breadth of the petition;" id. at p. 7, ll. 2–3; and the "Court has grave concerns about whether any of petitioners' claims as currently pled will survive the pending mentions to dismiss," id. at p. 26, ll. 1–4.  The Court also made clear that "regardless of scope and focus of any future petition or amended petition," Plaintiffs need "to look at this question of state court relief and whether that's the appropriate way to go.  Federalism concerns require that I look at that first." Id. at p. 39, ll. 20–24.  The parties thereafter requested a Rubin Order, which this Court granted and then extended.  This matter comes before the Court on Plaintiffs' unilateral request for another extension.

At the outset, Plaintiffs' motion creates an inaccurate narrative. The SCDC worked incredibly hard and fast to make all of this happen.  Testing of all inmates and staff began and remains ongoing.  At the same time, SCDC worked on creating a new policy.  As with any policy, it had to be carefully reviewed by a number of officials in the agency, revised several times, and implemented.  This typically takes at least a year or more to complete.  Yet the SCDC worked fervently to create and finalize the Covid-19 policy that was implemented in record time on October 6, 2020.  And it did so while taking proactive and unprecedented measures in response to COVID-19, which has placed a great deal of additional work on SCDC Medical, Operations, the Institutions, and all Departments.

Just yesterday, the Joint Bond Review Committee approved a project to allow SCDC to spend a million dollars on air ionizers to slow the spread of COVID-19 within its facilities.  By December 2020, the upgrades will be installed into heating, ventilation, and air conditioning systems at correctional facilities.[1]  SCDC, the State, and the Pardon and Parole Board (PPP) and the Board members having been actively working at the front-end to contain these unique and

---

[1] See https://www.thestate.com/news/coronavirus/article246254875.html

complex issues, issuing protective measures and protocols since "Phase 1" began in February 2020. And SCDC has been continuously testing inmates and staff while also developing a Covid-19 Policy that meets security, safety, and staffing concerns necessary for a penological institution.[2]

This is a far cry from deliberate indifference. Plaintiffs, however, ask for an additional 21 days "to review the October 5, 2020 Respondents' Changes … and confirm whether the October 5, 2020 Respondents' Changes to the draft policy are acceptable such that this action can be dismissed." In other words, they want to quarrel over the minutiae of a groundbreaking policy to decide whether to dismiss their meritless claims against SCDC officials. In the process, Plaintiffs' counsel insinuate they were misled by the undersigned counsel. Respondents take great offense to these representations to the Court, particularly given the posture of the case.

First, Plaintiffs have no legitimate federal claim. Second, there is no settlement in this case. Respondents made that clear from the outset. After all, SCDC has been on the front-end of the pandemic and worked tirelessly since it began. Creating a policy and increasing testing was always SCDC's plan. It had nothing to do with this lawsuit. While Respondents have continued to welcome input from Plaintiffs' counsel, they never gave Plaintiffs the power to dictate the final terms of the policy. Thus, with all due respect, the Plaintiffs have no right to "confirm whether the October 5, 2020 Respondents' Changes to the draft policy are acceptable."

Plaintiffs' Motion states, in its selective narrative, "[a]n additional week passed and on August 21, 2020, Respondents sent a draft policy 'for approval' to Petitioners which was largely consistent with the Parties' prior discussions and agreed upon drafts," inferring (perhaps inadvertently) that the draft policy was sent by Respondents for their approval. Respectfully, that

---

[2] "Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner v. Safley*, 482 U.S. 78, 84-85 (1987).

is not the case. The only "approval" at issue is approval by various SCDC Departments, Operations, Agency Officials, and ultimately the Director of SCDC. Ultimately, after multiple revisions by the SCDC experts, some changes were made. But that is their prerogative. This was not a last-minute sandbag.

There is no settlement. There is no consent decree. There is no basis for continuing jurisdiction of this Court. Petitioners do not have approval rights over the Policy. At the end of the process, shortly before the Policy was to be signed, staff made some minor alterations from earlier draft versions. That said, SCDC still addressed the petitioners' entire proposals and policy, using much of their suggestions, even though it did not have to do so. The Policy had to be altered based on SCDC's internal knowledge to provide necessary flexibility to the SCDC Director within his discretion. This policy is attached as Exhibit A.

Policies can be amended. What is more, Director Stirling and the SCDC should be afforded deference in their handling of the COVID-19 virus and in formulating an appropriate response with regard to its prison system. *See Turner*, 482 U.S. at 84–85. "When [state] officials 'undertake[] to act in areas fraught with medical and scientific uncertainties,' their latitude 'must be especially broad.'" *S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613 (2020) (mem.) (Roberts, C.J., concurring) (quoting *Marshall v. United States*, 414 U.S. 417, 427 (1974)).

As the Chief Justice of the United States recently observed, when "those broad limits are not exceeded, they should not be subject to second-guessing by an 'unelected federal judiciary,' which lacks the background, competence, and expertise to assess public health and is not accountable to the people." *Id.* at 1613–14. "That is especially true where, as here, a party seeks emergency relief in an interlocutory posture, while local officials are actively shaping their response to changing facts on the ground." *Id.* at 1614. The State's "interest in protecting public

health" during "the current global pandemic," which "has caused a serious, widespread, rapidly-escalating public health crisis," after all, "is at its zenith." *In re Abbott*, 954 F.3d 772, 795 (5th Cir. 2020).

Against this backdrop, Respondents could validly oppose Plaintiffs' request outright. Nevertheless, Respondents are willing to consent to a more reasonable request for the Court to extend the Rubin Order's expiration date to Monday, October 12, 2020 to allow Plaintiffs time to digest the policy. But frankly, Respondents' patience is wearing thin. This is the last extension to which Respondents will consent. Plaintiffs' claims are specious, and they have no basis for requesting the continued exercise of federal jurisdiction over this meritless complaint. To that end, Respondents—as well as the Governor, who was voluntarily dismissed after expending significant resources defending the baseless claims raised against him—reserve all rights to reopen the case, request rulings on the motions to dismiss, and pursue such further relief as may be necessary.

Respectfully submitted,

*/s/ Janet Brooks Holmes*
Daniel R. Settana, Jr., (Federal ID 6065)
Janet Brooks Holmes (Federal ID 4822)
**The McKay Firm, P.A.**
1303 Blanding Street
Post Office Drawer 7217
Columbia, SC 29202
Telephone No.: (803) 256-4645

Columbia, South Carolina
October 7, 2020

***Attorneys for Respondents Bryan Stirling in his official capacity as Director of the South Carolina Department of Corrections, South Carolina Board of Pardons and Paroles, Christopher F Gibbs, Mollie Dupriest Taylor, Dan Batson, Henry S Eldridge, Lonnie Randolph, and Kim Frederick in their official capacities as members of the South Carolina Board of Pardons and Paroles***